Colcock, J.
A due regard to the nature of the federal government, and the principles on which it is formed, will place this case in a clear point of view. .
As to the first ground, the federal government possesses no powers but such as are expressly given to it, or necessarily incident to those given. And the States in the formation of this government, surrendered none of the incidents of sovereignty, except such as are enumerated in the 10th section of the 1st article of the constitution, which they are expressly prohibited from exercising. What is there then to prevent a State from punishing for coining, or passing coin, knowing it to be counterfeit 1 There is no prohibition of the exercise of this jurisdiction in the 10th clause ; and the act of congress on this subject, 2 Gradon’s Dig. p. 95, contains a clause to this effect, “ nothing in this act shall be construed to deprive the individual States of jurisdiction, under the laws of the several States, over offences made punishable by this act.” This is at least a legislative construction of the constitution, and, being made soon after the adoption of the constitution, it may be presumed, was done by some of the very men who framed the constitution itself.
But if a doubt could be entertained upon the subject, we have the exposition of the constitution, by some of the most able of its fra. mers, in a series of papers written in 1788, recommending it to the *565 people, in which will be found the following positions, after stating that the plan of the convention aims only at a partial union or consolidation.
“ The State governments would clearly retain all the rights .of sovereignty which they had before, and which were not by that act exclusively delegated to the United States. This exclusive delegation, or rather alienation of State sovereignty, would only exist in three cases; 1. Where the constitution in express terms granted the exclusive authority to the Union. 2. Where it granted in one instance an authority to the Union, and in another prohibited the States from exercising the like authority; and, lastly, where it granted an authority to the Union, to which a similar authority in the States would be absolutely and totally contradictory and repugnant.”
It is most manifest that this case is not embraced in either of the two first; let us then see if it can be comprehended in the last. Is the exercise of the power to punish for coining or passing counterfeit coin by the individual States, contradictory and repugnant to the exercise of a similar power by the Union ? In my opinion, it certainly is not. But I will examine the reasons urged by the prisoner’s counsel. 1. It is said, there is no instance in the law of a concurrence of jurisdiction in criminal cases. 2. That a man might be twice punished ; and 3. That a difference in the measure of punishment may, and in this instance, does exist.
As to the first, the history of every country of which I have any knowledge, at least, in which I may say the science of law has made any progress, or the population of which is of any extent, will afford instances of it. The country from whence we draw our system of jurisprudence, certainly affords abundant proof of the existence of a concurrent jurisdiction. Our own country, until very lately, offered proofs of its existence in the county courts, which exercised a concurrent jurisdiction with our superior courts ia criminal matters.
As to the second objection, “ a man may be twice tried,” this could not possibly happen : first, because it is the established cemi-tas gentium, and is not unfrequently brought into practice, to discharge one accused of a crime, who has been tried by a court of competent jurisdiction. If this prevails among nations who are strangers to each other, could it fail to be exercised with us who are so intimately bound by political ties ? But a guard yet more sure is to be found in the 7th article of amendments to the federal constitution.
*566 The last objection may be considered as already removed, by shewing that a concurrence of jurisdiction may exist in criminal cases, for wherever this does exist, there'may, and very frequently will be a difference in the punishment. .
, , But I go further. When the nature of our compact, and the extent of our country are considered, it may happen that the commission of a crime may be more injurious to the interest of the community in one State, than in another ; and hence may arise a legitimate ground for a more severe punishment. I would not be understood to mean ‘that that is the case here, but only as intending to show that a difference'of punishment is no argument against the exercise of a concurrent jurisdiction.
As to the second ground, it is only necessary to remark, that whatever is the current coin of the United States, becomes the current coin of the individual State. A Spanish milled dollar is a current coin of the United States.
The third ground states that a different value has been fixed by the general government. The indictment took notice of a difference in denomination, but there is in fact no difference in value. The dollar is still the same ; and if there had been a difference, it was incumbent on the prisoner to show it, and to prove that the dollar made current by congress was different from the Spanish milled dollar. But there was not even an attempt to do this ; and this embraces all that is necessary to be said on the fourth ground.
As.to the fifth ground, it is certainly a perversion of language, to say the definite article the may refer to any dollars. This objection might have been made, if the jury had said a dollar. But when the record is read, it proves that the prisoner was indicted for passing a Spanish milled dollar, and the verdict says he was guilty of passing the dollar, that is, the dollar charged in the indictment.
' The sixth ground is also founded on the misconstruction of very plain language. • The act, after enumerating the various coins, says, “ any person who shall counterfeit, or utter or attempt, to pass, knowing them to be counterfeit, any of the aforesaid gold or silver coins,” &c., that is, any one of them. • I.t appears to me, that the construction contended for by the prisoner, would rather amount to this, that a person must pass one or more of each and every different kind enumerated in (he act, rather than, two of any partieu-lar kind, to complete the crime. The word any is synonymous with either, as will appear by the authority of all dictionary makers, and by grammarians is defined to be .an adjective, meaning one or more, as the case may be. It must at any rate be allowed, that the word *567 must be taken in that meaning which the legislature have most clearly attached to it. I confess t feel that I am saying more on this ground than it merits.
The last ground merits some attention. When the criminal law writers say, that you shall not give in evidence the stealing of one article, upon an indictment for stealing another, the reason is obvious ; because the articles being separate and distinct in their nature, and the subject of different felonies, the party, although innocent, might be convicted; for he would not be prepared to defend himself against the larceny of any other article, than that specified in the indictment. The rule' of law in larceny is, that if an article which has been stolen, be found in the possession of one who will not, or cannot, account for the possession, that he shall be adjudged to be the thief. But it is contradictory to common sense, as well as common justice, to apply the rule where a man had not had an opportunity of accounting for the possession. But when a man is charged with coining and passing counterfeit coin, can there, be a more direct mode of proving his guilt, than by producing the instruments with which the coin-was made? Would it operate as a surprise? Surely the connexion between the offence and the instrument is such, that the accused would naturally be prepared to account for the possession of the latter, when he came prepared to defend himself against the former. Upon the whole, I am against the motion for a new trial, and in arrest of judgment.
Gkimke,'J.
The two general questions in this case are, 1. Whether the power of trying and punishing persons who counterfeit the current coin of the United States, is vested solely in the Congress of the United States ; and 2. Whether the State courts are not likewise deprived of the power of punishing persons passing counterfeit money, knowing it to be counterfeit.
With respect to the first point, there can be no doubt, that under the 8th section of the first article of the United States constitution, the individual States gave up to the Congress of the United States this power; for it is there enacted, that the Congress shall have power to coin money, and to regulate the value thereof, and of foreign coin, and to provide for the punishment of counterfeiting the current coin of the United States; and in the tenth section of the same article, it is declared, that no State shall coin money. By these sections, it appears, that the power of coining is not only vested in Congress,- but that the individual States are divested of it.
With respect to the second point, it does not appear that the power of punishing persons for passing counterfeit coin, knowing *568 it to be counterfeit, was either expressly given to the Congress of the United States, or divested out of the individual States. Now section of the amendments to the constitution, as agreed to by the several States, and which has now become a component part 0p (|ie constitution, declares, that tlie enumeration in the constitution of certain rights, shall not be construed to deny or disparage others retained by the people j and in the 10th section of the same, it is further provided, that the powers not delegated to the United States by the constitution, nor prohibited by it-to the State, are reserved to the States, respectively, or to the people. When we examine the powers conceded by the individual States, we find no enumeration of this power given to Congress, and when we review the powers denied to the individual States, we discover no mention whatever of their being divested of this power. The individual States were in possession of this power before the ratification of the constitution of the United States ; and if there is no express declaration in that instrument, which deprives them of it, they must still retain it, unless they should be divested thereof by construction, or implication.
Upon this head it has been argued, 1. That a man tried by the courts of this State for passing counterfeit coin, would be punished with death; whereas, the act of Congress attaches to this crime only fine and imprisonment. But this argument can be of no weight, as in the individual States, a greater variety of punishments may be, and probably are inflicted, for this crime ; and indeed it is well known, that even in this State, the punishment of offenders, when convicted under the common law, or the statute law, in some cases, is essentially different. The difference, therefore, of the punishment, cart, in my opinion, be of no avail in the present motion.
It has been further argued, that Congress having the sole power of regulating the value of coin made current in the United States, that part of the act of assembly, Grimke’s Coll. 314, which declares the weight, and regulates the value of the coins therein enumerated, must be considered as repealed by the constitutional provision on that head ; that then it follows as a matter of course, that the passing of a counterfeit dollar not regulated in its value according to the law of Congress, is not indictable under our act of the assembly. But the regulating of the weight and value of good coin, is very different from the passing of bad and counterfeit coin. There can be no doubt, that from the regulation of the value of the coin by Congress, that all the States, and every individual in them, is bound by such valuation and such restriction. It is the general law of *569 the land, and must be observed by all, for it is founded on powers given to Congress, and renounced by the States. It cannot, however, be concluded thence, that because this exclusive right of regulating the value of coin is vested in Congress, that therefore they have the sole right of punishing the crime of passing counterfeit coin.
But the act of Congress of the 21st April, 1806, 2 Graydon, 95, contemplates a case of this kind, and that whenever it does happen, that a State shall have previously provided by law, for this offence of passing counterfeit money, it shall not be deprived of the power of punishing it; for, in the fourth section, it declares that nothing in that act contained, shall be construed to deprive the courts of the individual States of jurisdiction under the laws of the several States, over offences made punishable by this act. Here is an explicit acknowledgment, on the part of the United States, that the individual States were previously possessed of this power; that it was not abandoned by the individual States, on the ratification of the constitution ; and that the courts of the United States, to whom this act gives a concurrent jurisdiction, whether constitutionally or not, is not for me to say, with the State courts, shall not construe this power given to them, so as to deprive the State courts of their right of jurisdiction in a case of this kind, viz., the'passing of foreign counterfeit coin.
I will allow, that this State court has no jurisdiction whatever, over money coined at the mint of the United States, nor any that is not particularly enumerated in our act of assembly ; but to coun. terfeit any species of coin which is brought from foreign nations, and which has been declared current by act of assembly, is an of-fence against that act of assembly, and punishable by this court.
Another argument of great importance is, that an offender might be twice tried for the same offence; once under the act of Congress, and again under the State act. But if the courts of the United States have a concurrent jurisdiction over this crime, with this court, then must either court allow of the plea of autrefois acquit, which will be a good bar'to a second prosecution, because a determination in a court having competent jurisdiction, must be final and conclusive on all courts of concurrent jurisdiction. 1 Leach, 160.
I do not however mean to allow, that the courts of the United States have such concurrent jurisdiction with this court; but as I have said before, that is not a point for me to determine. I am only called on to decide, whether the prisoner at the bar is amenable to our courts, for the offence of which he has been found guilty.
*570 Jt has likewise been argued, that the verdict is so ambiguous, that no judgment could be entered up thereon. The indictment charged the prisoner with passing a dollar in the likeness and similitude of a Spanish milled dollar ; the dollar was produced in evidence, and jury have found him guilty of passing the dollar, knowing it to be counterfeit. How it is possible, in a case of this kind, and with such testimony to give a more pointed, definite, legal verdict, I cannot divine.
As to the objection, that the act of assembly speaks of coins, in the plural, and here the party is convicted of passing only one piece, and therefore the conviction is wrong, I think the act of assembly extends to the passing of one piece as well as many, for the words are, “ any person who shall utter, knowing them to be counterfeit, any of the aforesaid coins.” Now the word any means any one, any two, or any more; for, if this was not the construction, then one who was indicted for passing two pieces, might raise the same objection, and say, that the act means more than two, or that it meant all of them. My opinion on this point, I find confirmed by a similar case in 1 Leach, p. 1, Hassel’s case. Upon the whole, my judgment is, that the indictment is properly framed upon our act of assembly ; that that act is of force quoad the punishment of persons passing conterfeiting coin mentioned in that'act; that the verdict is full, precise, and definite; and that, therefore, the motion must be discharged.
Bay, J.
The prisoner was indicted under the act of 1783, passed by the legislature of this State, against counterfeiting the gold and silver coins made to pass current within this State. Among those coins the Spanish milled dollar is mentioned ; and, indeed, is made the standard, by which the relative value of all the other coins are regulated and ascertained.
The indictment, as usual in such cases, contained two counts : 1. One for counterfeiting. 2. The other for passing a Spanish milled dollar, knowing it to be counterfeit. The second clause of the abovementioned act, declares, “ that any person who shall counterfeit, or utter, or attempt to pass, knowing them to be counterfeit, any of the aforesaid gold and silver coins, or keep in his, or her possession, any stamp, dye, or mould, for coining the same, upon being duly convicted thereof, shall be adjudged guilty of felony, and suffer death without benefit of clergy.”
The attorney general did not attempt to press the evidence against the prisoner, under the first count for coining. Under the second count, the evidence was very clear and conclusive, as to the *571 passing of the counterfeit dollar, stated in the indictment, by the prisoner; and, as to the baseness of the metal of which it was composed, the scienter, or knowledge of this baseness of the metal, was inferred from sundry suspicious circumstances,. 'proved on the trial. Such as some other base money being passed at or about the market, and other places in its vicinity, and supposed to be by the prisoner and one of his associates, and particularly by a box found in-his trunks, after he was apprehended, containing sundry instruments, which had the appearance of coining instruments, and also sundry materials for that purpose.
Upon the trial, an objection was made to the offering these instruments, &c., found in prisoner’s trunk, as evidence against him ; as it was alleged that this fact of his having instruments in his possession for coining, of itself formed a distinct and separate felony by the act, for which he might be tried and punished. So that one felonious act, ought not to be given in evidence to support another. After hearing arguments in favor of the objection, the court admit, ted, that one felony could not be given in evidence to support another ; as, for instance, the stealing of a horse, could not be given in evidence to prove a man guilty of stealing a negro, because they are independent and distinct offences; both susceptible of external proof. But when a scienter was to be proved, it must be drawn from circumstauces. This species of evidence lies deep in the human breast, beyond the reach of mortal ken. To find out this' knowledge, therefore, is always a difficult research, and it must be drawn from circumstances, indicative of the operations of the mind; and, at last, a reasonable presumption is all that can be obtained, or acquired; all the legislators and lawyers on earth, can go no further. It was, therefore, under these impressions, that the Circuit Court permitted these forging instruments, found in prisoner’s possession, to be given in evidence to the jury; not, as has been stated, to pvove the offence of passing the counterfeit money, but as a circumstance to show that he must have had a knowledge of the baseness of the metal, of which the false dollar was composed.
And unless circumstances of this kind, or those of a similar nature, were permitted to be given in evidence to a jury, all that class of cases or offences where a knowledge of the falsehood, of any kind or nature whatever, forms or constitutes the principal ingredient of an offence, must fall to the ground, and the means of pun. ishment must become useless and inoperative.
It is also true, that on the trial, an objection was taken to the jurisdiction of a' State Court to try this offence under the act of 1783. *572 It was contended, that the constitution of the United States and the acts of Congress made in pursuance thereof, had virtually repealed lhis uct, and that this offence, if any had been committed, belonged exclusively to the Courts of the United States, Both these objections were overruled ; the first on the ground, that the, State of South Carolina in the year 1783, when this act was passed, being a sovereign and independent State, there was nothing to circumscribe her powers and jurisdiction, or to limit her authority to pass the law in question, which was then soon after the revolutionary war, justified by the wisest and soundest policy, in order to prevent the introduction and circulation of base and false metal, under the appearance and similitude of foreign coins, which, at that period, abounded in the State. 2. On the ground that Congress being a delegated body, from the different States, possessed no original jurisdiction. Every power that body possessed was derived from the States, and nothing was within its authority, but what was expressly given by the constitution that gave it heing. That this constitution might well be compared to a special letter of attorney from principals to agents, to do and perform certain specified acts, beyond which their powers were at an end. That these principals being conceded, and indeed they could not be denied, there was not any thing in the constitution, which went directly or indirectly to repeal the act in question, or to prevent the State of South Carolina from punishing the offence of passing counterfeit money, stated in the second count in the indictment.
The case then went to the jury, and they found the prisoner guilty under the second count in the indictment, “of passing the dollar knowing it to be a counterfeit.” • The foregoing is a concise history of the case as it passed on the trial. From this verdict, the counsel for the prisoner appealed, on a number of grounds.
As to the first ground I remain of the same opinion as at the trial. I cannot concede that the power of punishing this offence is taken away from the State ; and even doubt whether the Courts of the United States have so much as a concurrent jurisdiction. It is true the consitution of the United States, art. , provides for counterfeiting the current coin of the United States ; but by the terms current coin,” which are coupled together with “ securities” in the same sentence, is clearly to be understood the money coined at the mint of the United States, and which is very emphatically called the current coin of the United States. It was to guard and protect these, and these only, from being falsified and debased, that this power of providing a punishment for counterfeiting was given to *573 Congress. Not a sentence or word is said about providing a pun. ishment for passing counterfeit foreign.coins, in this part of the section. The current coins, therein mentioned, must be taken in contradistinction to the foreign coins mentioned in the preceding sentence, whose value was only to be regulated by Congress; but nothing is said about counterfeiting them, or about providing for the punishment of passing them, knowing them to be counterfeit.
If this construction is correct, and 1 trust it will be found, upon a close examination, to be a true one, then it will result as a necessary consequence, that no power whatever is given by the constitution to Congress to punish for counterfeiting foreign coins, or passing them, knowing them to be counterfeit, within the United States. That power remains, and must of necessity remain with the individual States, who still retain all their original powers of independent sovereignties, not specially delegated to Congress. The offence of passing counterfeit foreign coins, is an evil of great magnitude, for millions of base dollars might be brought into the State and circulated, and if the State had not the power of punishing the offence, the evil must go unredressed. This offence therefore must be punished by the State laws, or go off with impunity : and so sensible was Congress of the necessity of referring this offence to the State Courts throughout the Union, that in tbeir act of 1806, when providing for the punishment of passing the current coin of the United States, knowing it to be counterfeit, they inserted a provision that whenever it should happen that any State should have previously provided by law for this offence of passing counterfeit money, it should not be deprived of the power of punishing this offence. And that nothing, in the said act contained, should be so construed as to deprive the State Courts of jurisdiction under the laws of the several States. 2 Graydon Digest, 95.
Here, then, is a saving and a reservation of the right of the State Courts to punish this offence under State laws, if any such salvo or reservation was necessary. But in truth, this right was never given up by the States. So that this retrocession, if I may be allowed the expression, on the part of Congress, was an. unnecessary act. It serves however to shew how very doubtful that body was, as to its exclusive power and jurisdiction over this offence.
As to the second general ground, taken on the argument in the Court of Appeals, with respect to the constructive surrender of this right or power to the United States; the advocates for exclusive jurisdiction on the part of the United States, foreseeing that there was no express cession of this right in the constitution, have re *574 sorted to construction, and have contended, that the power of punishing this offence is implied in the terms of the constitution. I have already observed that Congress had no original jurisdiction, and possesses now none but what is given to it by the States. 1 ’ o j
The twelfth article of the amendments declares, “ that all powers not delegated to the United States by the constitution, nor prohibited by it to the States, are reserved to the States respectively or to the people.” Here, then, is an express reservation of all powers not expressly given, which in my opinion cuts off forever all constructive or implied powers. And, indeed, it is a principle which governs all corporate bodies, that nothing shall ever be presumed to be within their jurisdiction, but what is expressly given.
The conclusion I draw from all the foregoing premises under this head is, that as the constitution has not expressly given to Congress the power of punishing the passing of foreign coins, knowing them to be counterfeit, that body has no constructive or implied power to do so; and that as South Carolina, being a sovereign and independent State, had a right and power to punish this offence and to pass any law for that purpose ; and, by passing the act under consideration, has done so ; there is nothing in the constitution of the United States which repeals it. Finally, that the act as to that particular offence remains in full force and operation.
3. As to the admission of the coining instruments, and materials found in prisoner’s possession, to prove the scienter, or knowledge of the counterfeit, or baseness of the metal, I have nothing to add to the opinion I delivered to the jury on the trial, and which is mentioned in a former part of this opinion, further than that a majority of the judges of this State concurred with me in opinion, at Columbia, on this' point, in the ease of Odell, who was tried at Pendleton, October, 1815. On all the grounds, I am against the motion in arrest of judgment, and also against the motion for a new trial.